UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY MARTIN,

          Petitioner,

vs.

UNITED STATES OF AMERICA,

          Respondent.

_____/

CRIMINAL CASE NO.  95-81165
CIVIL CASE NO.      03-71781

HONORABLE GERALD E. ROSEN
HONORABLE STEVEN D. PEPE

*AMENDED*

REPORT AND RECOMMENDATION

On October 1, 2004, Petitioner filed a motion under 28 U.S.C. §2255 to set aside his

conviction pertaining to several drug and money laundering offenses (Dkt #368). On October 13,

2004, Petitioner's claims regarding ineffective assistance of trial and appellate counsel were referred

for report and recommendation under 28 U.S.C. § 636(b)(1)(B). Respondent filed a response to the

motion on March 30, 2005 (Dkt #375, 376). Petitioner filed a reply on May 12, 2005; affidavits

supporting his motion to vacate on October 31, 2005; and a Motion for Leave to Supplement on May

8, 2006 (Dkt #381, 383, 388). Petitioner's motion to supplement was granted and Respondent

responded to the amended claim to the motion to vacate on December 6, 2006. For the reasons

stated below, IT IS RECOMMENDED that Petitioner's motion to vacate based on ineffective counsel

and *Gonzalez v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418 (2006), be DENIED.

I.      BACKGROUND

On September 6, 1996, Petitioner was arraigned on federal charges of conspiracy to possess

and distribute a controlled substance (Count 1), a continuing criminal enterprise (Count 2) and

several money laundering offenses (Counts 4–7), as detailed in the Sixth Superceding Indictment

of May 27, 1998 (*see* Criminal Docket; Dkt #188). Specifically, the Indictment charged:

Count 1:     21 U.S.C. §§ 841(a)(1), 846; Conspiracy to Possess with the Intent to Distribute and to Distribute a Controlled Substance.
Count 2:     21 U.S.C. § 848; Continuing Criminal Enterprise.
Count 4:     18 U.S.C. § 1956(h); Conspiracy to Launder Monetary Instruments.
Counts 5–7:  18 USC §§ 1956(a)(1)(A)(i), (B)(I); Laundering Monetary Instruments.

(Dkt #188, pp. 2, 6, 9, 14, 16, 17).

Petitioner pled not guilty at the September 6, 1996, arraignment and was represented by attorney Jeffrey Edison. On April 30, 1997, the Court granted the Government's motion to disqualify Attorney Edison as Petitioner's attorney, finding that Attorney Edison was operating under an actual conflict of interest because he formerly represented one of the Government's witnesses (Dkt #143, p. 5; *see* Dkt # 134, 141). On October 7, 1997, Craig Daly of the Federal Defenders Office was appointed as Petitioner's attorney (Dkt # 149). Subsequently, Petitioner attempted to hire Paul Curtis as his attorney, but the Court, upon the Government's motion, disqualified Attorney Curtis because he was either a current or former partner of Attorney Edison (Dkt #198; *see* Dkt #157, 162). Attorney Daly was re-appointed as Petitioner's attorney (Dkt #206).

A ten-day jury trial was held from January 19 to February 5, 1999, when a jury convicted Petitioner of all charges (Dkt #253).

During the course of the trial the witnesses, including co-conspirator Lucien Cannonier and the police officers on the scenes testified to the following relevant facts (*see* Dkt. #375-4):

- Petitioner and co-defendant Kwesi Karamoko formed Sankofa Corporation in 1989. Karamoko was the President and Petitioner was Vice President.
- Sankofa held four real properties 3037 Monterey, 6510 Bewick, 2909 Montclair and 13835 LaSalle.
- On September 2, 1993, the Michigan State Police executed a search warrant on the

Montclair property. 30 pounds of marijuana were recovered, as well as $50,431 in cash and six firearms. Co-conspirator Cannonier testified that 20 pounds of marijuana were sold at that location each day and that Petitioner and Karamoko ran the operation.

- On March 8, 1995, Detroit police officers executed a search warrant on the LaSalle property. Co-defendant Cannonier was arrested and 100 pounds of marijuana were seized as well as $16,273 and two rifles.
- On May 24, 1995, Detroit police officers observed Petitioner entering an abandoned apartment building at 3037 Monterey and, upon departing, placing a large plastic garbage bag in the rear of his car. He was observed smoking a marijuana cigarette while driving. He was stopped and arrested, his vehicle was searched. The bag contained approximately three and one half pounds of marijuana. Keys for the Bewick and Monterey properties were found on Petitioner. Police executed a warrant on the Monterey property and found that the upper two floors had been converted into a marijuana growing site with a system for lighting, fertilizing, watering and packaging marijuana. Officers seized 245 pounds of harvested marijuana, 100 marijuana plants, $61,910 in cash and several firearms. Co-defendant Cannonier testified that Petitioner and Karamoko oversaw the manufacturing at this location and that 20 pounds were sold daily from this location. Cannonier also testified that Petitioner and Karamoko supplied the marijuana and determined the price.
- On May 25, 1995, Detroit Police officers executed a search warrant on the Bewick property. Officers seized 12 firearms, a bullet-proof vest, 2,800 rounds of ammunition, $13,518 in cash, blank birth certificates and 500 pounds of marijuana.

On September 3, 1999, Petitioner submitted an affidavit to the court alleging ineffective assistance of counsel and prosecutorial misconduct (the "September 3, 1999, Affidavit")(Dkt #267, pp. 2–8, 8–10). On November 11, 1999, Petitioner moved for a new trial (Dkt #281, *see* Dkt #294). At a motion and sentencing hearing on January 10, 2000, the Court denied Petitioner's motion for a new trial, dismissed Count 2, and sentenced Petitioner to 293 months for Count 1, and 240 months for Counts 4-7, to run concurrently (Dkt #295). Before sentencing Judge Gerald E. Rosen requested that Attorney Daly address the claims made in the September 3, 1999, Affidavit, which he did (Dkt. # 306, p. 19–36). Attorney Daly had received notice of the affidavit for the first time on the morning of sentencing (*Id.* at p. 20; Dkt. # 368, p. 26). Attorney Daly addressed Petitioner's complaints about his representation and then Judge Rosen gave Petitioner an opportunity to speak on the issue

as well (Dkt. #360, pp. 30-36). Judge Rosen explained to Petitioner that Attorney Daly's representation during the trial was, "from the time he came into the case, . . . far more aggressive, far more involved, far more diligent, then any of the attorneys – some of whom [Petitioner had] hired [himself]" (*Id.* at p. 32). Judge Rosen also explained that failure to call some witnesses that a defendant wishes to have called could be a strategic decision based on many factors (*Id.* at pp. 32-33).

On January 13, 2000, Attorney Daly submitted Petitioner's notice of appeal and filed a motion to withdraw as counsel for Defendant, which was granted on February 29, 2000 (Dkt #296, 297). Judge Rosen granted the motion to withdraw and appointed the Federal Defenders Office to represent Petitioner (Dkt. # 307).

On January 18, 2000, while represented by the Federal Defender Office, Defendant appealed his conviction and sentence (Dkt. #298). The parties apparently agree that Petitioner was represented by three court-appointed appellate attorneys: first, Elizabeth Jacobs, who withdrew before filing a brief; next Robert Rosenberg, who also withdrew but after he filed an appeal brief on Petitioner's behalf (and after Petitioner asserted that their relationship had broken down); and Melvin Houston, who was allowed to file a supplemental brief on Petitioner's behalf.

On December 18, 2001, the Sixth Circuit affirmed Defendant's conviction (Dkt. #353). *United States v. Martin*, 24 Fed. Appx. 504 (6th Cir. 2001). The United States Supreme Court denied Defendant's petition for certiorari on October 6, 2003 (Dkt. #367). *Martin v. United States*, 540 U.S. 869. Defendant filed the present motion to set aside his sentence within the one-year statute of limitations (Dkt # 368; *see* 28 U.S.C. §2255).

## II.   ANALYSIS

### A.   *Standard of Review Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)*

A prisoner seeking relief under §2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett*, 334 F.3d at 496-97 (citation omitted).  Where the petitioner's motion alleges a non-constitutional error, the petitioner must establish a " 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990)).

In a §2255 motion, a petitioner has the burden of sustaining his contentions by a preponderance of the evidence.  *Wright v. United States*, 624 F.2d 557, 558 (5th Cir.1980).

A petitioner is procedurally barred from raising claims in a §2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal.  *Frady*, 456 U.S. at 167-68; *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir.1996).  Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under §2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that he is actually innocent.  *Bousley v. United States*, 523 U.S. 614, 622 (1998).  The procedural default rule does not apply, however, to claims of ineffective assistance of counsel.  Claims of ineffective assistance of trial counsel generally are not reviewable on direct appeal, because the record may be inadequate to permit review.  *See United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir.1998); *United States v. Tucker*, 90 F.3d 1135, 1143

(6th Cir.1996). Consequently, such claims may be raised for the first time in a §2255 proceeding, without regard to a failure to raise them on direct appeal. *See Tucker*, 90 F.3d at 1143; *United States v. Allison*, 59 F.3d 43, 47 (6th Cir.1995).

In an action to vacate or correct the sentence, a court is required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. §2255. Yet, the statute "does not require a full blown evidentiary hearing in every instance . . . . Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made." *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir.2003) (*quoting United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.1993)). No evidentiary hearing is required if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F .3d 238, 240 (8th Cir.1995), *quoted in Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir.1999). In sum, where the motion is inadequate on its face or, although facially adequate, is conclusively refuted by the files and records of the case, a hearing is not necessary. 28 U.S.C. §2255; *Neal v. United States*, No. 94-2416, 1995 WL 325716, at *2 (6th Cir. 1995)(citing *United States v. Carbone*, 880 F.2d 1500, 1502 (1st Cir.1989)).

### B. The Effectiveness of Petitioner's Counsel

The Supreme Court has established a two prong test for determining whether counsel's performance was ineffective for Sixth Amendment purposes:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In evaluating alleged prejudice resulting from ineffective assistance of counsel, "[i]t is not enough . . . to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* (citation omitted). Rather, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The standard to be applied is not that of a hypothetical perfect counsel, but that of reasonably effective counsel under prevailing professional norms. *Strickland*, *supra*, 466 U.S. at 687-88. The fundamental test of effective assistance of counsel is whether counsel "bring[s] to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.*

When evaluating counsel's performance under the *Strickland* test, the Sixth Circuit has emphasized that "[a] reviewing court must give a highly deferential scrutiny to counsel's performance. . .". *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). This is based on the well-established principle that legal counsel is presumed competent. *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989), *aff'd without opinion*, 972 F.2d 348 (6th Cir. 1992), *cert.*

*denied*, 507 U.S. 917 (1993).  As the Court in *Strickland* stressed:

> it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

466 U.S. at 689.

"The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential."  *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).  A fair assessment of Petitioner's counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, so as to reconstruct the circumstances of his challenged conduct, and to evaluate the conduct from his perspective at the time.  *Stickland*, *supra*, 466 U.S. at 689.

In his initial motion Petitioner alleges seven instances of ineffective assistance of counsel. He alleges that his trial counsel, Attorney Daly, was (1) operating under a conflict of interest during Petitioner's sentencing, and (2) failed to object to sentencing enhancements under the then-recent Supreme Court decision in *Jones v. United States*, 526 U.S. 227 (1999), (3) failed to call witnesses or mount an affirmative defense, and (4) failed to resolve inaccuracies in the presentence report under Fed .R. Crim. P. 32(c).  Petitioner also claims his appellate counsel was ineffective in failing to (5) file a reply brief or demand oral argument and (6) to argue that the jury's verdict was against the weight of the evidence.  Finally, Petitioner claims that (7) both his trial and appellate counsel failed to object to his sentence(s) for Laundering Monetary Instruments (Counts 4–7).

### 1. Trial Counsel

#### (a.) conflict of interest

Petitioner alleges that at his sentencing hearing on January 10, 2000, Attorney Daly was under an actual conflict of interest when asked by Judge Rosen to respond to Petitioner's allegations of ineffective assistance of counsel. Petitioner alleges that his accusations of incompetence against Attorney Daly created a conflict of interest in that in order to respond to Petitioner's allegations Attorney Daly was required to abandon his duty of loyalty to his client and to contradict him in court. Although most ineffective assistance of counsel claims require a showing of prejudice to be sustained, prejudice is presumed if the attorney is under an actual conflict of interest *and makes a decision adverse to his client as a result of this conflict. Mickens v. Taylor*, 535 U.S. 162, 173–74 (2002) (emphasis supplied); *Cuyler v. Sullivan*, 446 US 335, 349–50 (1980). The Sixth Circuit has held that this lower standard applies only when there is an "actual significant conflict," not merely where the conflict is "irrelevant or merely hypothetical." *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987) *cert. denied*, 484 U.S. 870 (quoting *United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir. 1983), *cert. denied*, 464 U.S. 991). A prisoner must identify "specific instances in the record to suggest an actual conflict or impairment of their interests," where the attorney "made a choice between possible alternative courses of action." *Id.*

In support of his argument that Attorney Daly was under a conflict of interest at Petitioner's sentencing, Petitioner points to the fact that Attorney Daly was asked by the sentencing judge at the hearing to respond to the September 3, 1999, affidavit Petitioner had submitted alleging that

Attorney Daly had provided ineffective assistance of counsel (Motion to Vacate, Dkt. # 368, p. 18; Affidavit, Dkt. #267).[1]

Yet, such disputes between defendant and counsel are commonplace and "often culminate in a defendant's request for substitute counsel." *United States v. White*, 174 F.3d 290, 296 (2d Cir. 1999). " '[A]n actual conflict of interest' does not necessarily arise every time that an attorney responds to allegations of incompetent representation or contradicts his client in open court." *United States v. Moree*, 220 F.3d 65, 71 (2d Cir. 2000) (citing *White*). A defendant does not have "the unilateral power to establish a 'conflict of interest' simply by 'expressing dissatisfaction with his attorney's performance.' " *Id.* In these situations, the *Strickland* standard remains the appropriate measure of counsel's effectiveness. *Id.*; *see also*, *Wilson v. Rogers*, 1997 WL 615767, *3-4 (6th Cir. 1997).

Attorney Daly addressing Petitioner's concerns regarding his representation before the sentencing judge does not rise to an actual conflict of interest. Therefore, the proffered examples of Attorney Daly's ineffective assistance of counsel shall be reviewed under the *Strickland* test.

### (b.) *Apprendi* challenge

Post-*Apprendi v. New Jersey*, 530 U.S. 446 (2000), a defendant convicted of a Title 21 drug offense cannot receive a sentence above the "default" maximum sentence contained in §841(b) of Title 21 absent a jury finding as to the drug quantity which triggers the higher statutory maximum.

Although Petitioner was sentenced before the decision in *Apprendi*, he argues that Attorney Daly should have been aware of *Apprendi*'s inevitability given the holding in *Jones v. United States*,

---

[1] Petitioner agrees that Attorney Daly received notice of the affidavit for the first time on the morning of sentencing, January 10, 2000 (Dkt. # 368, p. 26).

526 U.S. 227 (1999). In *Jones* the Supreme Court held that certain sentence enhancement provisions of the federal "carjacking" statute, 18 U.S.C. §2119, were offense elements that the government must charge in the indictment and prove to a jury beyond a reasonable doubt. 526 U.S. at 231.

Yet, this Court has expressly rejected the claim that failure to raise an *Apprendi*-type challenge prior to the issuance of the *Apprendi* decision constitutes ineffective assistance of counsel:

> [T]he established precedent in every circuit, including the Sixth Circuit, before *Apprendi* was that drug quantity was not required to be charged in the indictment or submitted to the jury. Consequently, there would have been no reasonable probability of success in raising such a challenge during trial or on appeal. This Court cannot say that trial/appellate counsel were deficient in failing to raise a challenge that, at the time, was clearly without merit. Accordingly, Defendant's claims of ineffective assistance of counsel based upon trial/appellate counsel's failure to assert an *Apprendi*-type challenge during trial or appeal are without merit.

*United States v. Goode*, 143 F.Supp.2d 817, 827 (E.D. Mi. 2001), *affirmed* 305 F.3d 378 (6th Cir. 2002); *see also Alcorn v. Smith*, 781 F.2d 58, 59 (6th Cir. 1986)(nonegregious errors such as the failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel.").

Further, Petitioner has failed to show that he was prejudiced by Attorney Daly's failure to make an *Apprendi* challenge. The Sixth Circuit reviewed and rejected the substance of Petitioner's *Apprendi* claim on direct appeal holding that Petitioner's 293 month sentence on the drug conspiracy conviction was valid despite *Apprendi* because under the "total punishment" requirement of §5G1.2(d) of the Sentencing Guidelines "the district court had the authority under the Sentencing Guidelines to sentence Martin consecutively up to the upper limit of the drug amount guideline range. Absent the error, Martin's sentence would have been the same as that which was imposed" (Dkt. # 359; *United States v. Larry Martin*, 2001 WL 1631410 at *2).

The appellate court used the "plain-error" standard in reviewing Petitioner's *Apprendi*

argument because no constitutional objection to the drug quantity had been made at the trial court level. The "harmless error standard" would have been applicable had a constitutional objection been made. *United States v. Stewart*, 306 F.3d 295, 323 (6th Cir.2002) (reviewing properly preserved constitutional challenge under Apprendi for harmless error). Petitioner argues that the appellate court opinion would have been different under the "harmless error" test. Yet, this assumes a conclusion that is not borne out by the law of this circuit, i.e. that *Apprendi* claims must be remanded under the "harmless error" standard.

> Under this circuit's jurisprudence, there may be instances where a court might find that a defendant's substantial rights were not affected although drug quantity was neither alleged nor proved beyond a reasonable doubt. *See King,* 272 F.3d at 379-80; *see also Sanchez,* 269 F.3d at 1272 (holding that harmless error review is appropriate where drug quantity is neither alleged in the indictment nor proven beyond a reasonable doubt).

*U.S. v. Stewart*, 306 F.3d 295, 324 (6th Cir. 2002).

In *Stewart* the Sixth Circuit held that the substantial rights prong of the plain error analysis is akin to the harmless error analysis, the difference being that under plain error review the burden is on the defendant to show that the error was prejudicial (i.e. his substantial rights were affected) and under harmless error review the government bears the burden of showing that the error had no effect on a defendants' substantial rights. *Id.* at 322-23.

Because, in this case, the Sixth Circuit has already held under "plain error", that Petitioner failed to show that his substantial rights were affected by the lack of an *Apprendi* challenge, shifting the burden to the government to prove this same element under "harmless error" would not have affected the outcome of the decision. In sum, Petitioner cannot show that he was prejudiced by the absence of an *Apprendi* challenge at his trial.

### (c.)    failure to "present a defense"

Petitioner argues that Attorney Daly's refusal to call witnesses or present documentary evidence denied him effective counsel. Petitioner alleges that he made counsel aware of witnesses that would be willing to testify, but that Attorney Daly refused to interview or call these witnesses. On August 5, 2005, this Court issued an order that Petitioner produce declarations regarding the testimony of these witnesses, to establish whether counsel's alleged omission was potentially prejudicial.

In response to this Order Petitioner produced declarations from three witnesses that, if taken as true, support the contention that from 1992 till at least 1995 Petitioner was involved in a legitimate business, Strictly Roots Recordings (Dkt. # 385). Petitioner also supplied his own affidavit attesting to facts that would have been supplied by a now-deceased witness, Thomas Hollis, regarding another legitimate business, Alkebulan Arts and Deli. The timeframe of this relationship is not indicated.[2]

_____

[2]For the purposes of this motion this Report accepts Petitioner's assertions regarding the testimony that would have been offered by the now-deceased Thomas Hollis. Yet, it should be pointed out that Petitioner is likely mistaken in his belief that Mr. Hollis demise would automatically allow any statements he made to Petitioner to be presented by Petitioner as exceptions to hearsay rule for an unavailable witnesses. It is true that Mr. Hollis would qualify as an unavailable witness pursuant to MRE 804(1)(a)(4), yet being unavailable is only the first hurdle to being able to accept testimony from a non-original source. Petitioner would also have to show that Mr. Hollis' statement(s) satisfy one of the conditions of MRE 804(1)(b), none of which appear to apply:

> **(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.
>
> (2) *Statement Under Belief of Impending Death.* In a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant while believing that the

declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death.

(3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

(4) *Statement of Personal or Family History.*

> (A) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though declarant had no means of acquiring personal knowledge of the matter stated; or

> (B) a statement concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood, adoption, or marriage or was so intimately associated with the other's family as to be likely to have accurate information concerning the matter declared.

(5) *Deposition Testimony.* Testimony given as a witness in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

. . . .

(7) *Other Exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of the statement makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

MRE 804.

The witnesses would have testified that they took trips with Petitioner during this time to various locations in the United States, Canada, Africa, Jamaica and the Caribbean in the context of producing recordings and concerts and purchasing items for resale. One witness, Lititia White, worked for Petitioner in 1992 or 1993 for one year as a graphic designer and attests that she never saw any illegal activities and never witnessed Petitioner in the Sankofa Corporation offices, which were in the same building as Strictly Roots (Dkt. #385, p. 5). She also attests that Strictly Roots received thousands of "CDs, LPs, cassette tapes, video tapes, T-shirts and posters" which were shipped out for sale" (*Id.*).

Petitioner also takes issue with Attorney Daly's refusal to present as the following evidence:

(a.) a State of Michigan form showing that Sankofa was automatically dissolved on May 15, 1992 (Dkt. #368, Exh. G) – Petitioner argues that presenting this document would have brought into question the continued existence of the link between Sankofa and Petitioner;

(b.) videotapes from "television and press" that were present during the police raids on the various properties in question[3] – Petitioner argues that these show that the police entered the Bewick address with force and not with keys taken from Petitioner and the marijuana taken from the Monteray address was made up of "dead yellow leaves and leftover male plants" that were not saleable; and

(c.) a copy of an apparently legitimate $25,000 check Petitioner had received in 1989 – Petitioner argues that this check proves the existence of his legitimate income stream.

_____

[3] Petitioner has not proffered any details about the existence of these videotapes. For the purposes of this motion it will be assumed that they exist and depict the situation as Petitioner alleges.

As stated above, in evaluating alleged prejudice resulting from ineffective assistance of counsel, "[i]t is not enough . . . to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052. Rather, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

The testimony of the witnesses and the documentary evidence proffered by Petitioner is simply not enough to overcome the weeks of testimony and evidence produced by the government at trial, including testimony from the officers that seized drugs, guns and money linked to Petitioner through testimony from persons with direct knowledge (such as co-conspirator Cannonier) and marijuana taken directly from Petitioner. *United States v. Morrow*, 977 F.2d 222, 229-30 (6th Cir. 1992) (In the face of substantial evidence supporting [petitioner's] conviction, his claim that but for counsel's ineffective representation the outcome of the proceedings would have been different is hollow.).

Put another way, the proffered evidence does not support claims that would establish a "reasonable probability" of a different outcome. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The testimony may show that Petitioner operated legitimate businesses in Strictly Roots Recording and Alkebulan Deli, but does nothing to refute the evidence showing that he engaged in a conspiracy to sell marijuana at the rate of approximately at least 20 pounds per day. It may also show that he had the capacity to and did earn some money through legitimate means during the time that he contributed to Sankofa's holdings. Yet, none of the proffered witnesses has offered testimony regarding the financial viability or accounting of the businesses and Petitioner apparently

16

never filed any income tax returns reporting legitimate income. Further, the existence of one legitimate check received in the amount of $25,000 in 1989 does not substantiate Petitioner's theory that it was a decade of legitimate income that funded Sankofa's real estate purchases and not the income from the sale of drugs. At any rate, none of the proffered testimony explains away the vast quantity of marijuana, cash and weapons recovered from properties owned by Sankofa and, according to testimony, managed by Petitioner.

The alleged existence of media videotapes showing police entering the Bewick address by force and the unsaleable condition of the marijuana at the Monteray address is also overwhelmed by the fact there was plenty of testimony placing Petitioner at the top of the organization that sold at least 20 pounds of marijuana per day from these locations. Petitioner does not argue that the police did not have probable cause to enter the Bewick address, just that without the keys they testified to recovering from him they cannot link the address to him. Yet, this is not the case. Cannonier testified that the building had been used to as a distribution center for marijuana and that Petitioner (a/k/a Baba) had access to and controlled the building (Dkt. #328, Trial Proceedings Tr. January 27, 1999, p. 86, 88, 91).

With regard to the marijuana recovered at the Monteray address, Petitioner claims that the media's videotapes would have shown that marijuana recovered was made up of unuseable male plants and yellow leaves and should therefore have been excluded from the distributable amount that was attributed to him.

Petitioner can show no prejudice in Attorney Daly failing to produce evidence that would have allowed him to argue that the male marijuana plants at the Monteray address should have been excluded from the amount attributed to Petitioner. The plain language of §841(b) permits no

distinctions for marijuana plant gender, and when the language of the statute is clear, its plain meaning ordinarily controls its construction. *Moskal v. United States*, 498 U.S. 103, 113-17 (1990); *United States v. Albertini*, 472 U.S. 675, 680 (1985) (courts applying criminal laws generally must follow plain and unambiguous meaning of statutory language).

Other circuits have heard and rejected this argument, confirming that "Congress intended to outlaw all plants popularly known as marijuana" regardless of gender. *United States v. DeLeon*, 955 F.2d 1346, 1350 (9th Cir.1992); *see also United States v. Honneus*, 508 F.2d 566, 574-75 (1st Cir.1974) (Congress meant to include any and all marijuana-producing Cannabis when specifying "Cannabis sativa L."); *United States v. Walton*, 514 F.2d 201, 202-03 (D.C.Cir.1975); *United States v. Moore*, 446 F.2d 448, 450 (3d Cir.1971); *United States v. Curtis*, 965 F.2d 610, 615-16 (8th Cir.1992) (noting that guidelines do not distinguish between male and female plants); *United States v. Webb*, 945 F.2d 967, 968 (7th Cir.1991) (rejecting as irrelevant defendant's argument that only female plants should be counted for sentencing purposes), *U.S. v. Proyect*, 989 F.2d 84, 88 (2d Cir. 1993).

Further, Petitioner cannot show that Attorney Daly's refusal to produce the media's videotape evidence for the purposes of proving that a portion of the marijuana harvested at the Monterey address were "dead yellow leaves" fell below "the wide range of reasonable professional assistance". There are a number of reasons a competent attorney could chose not to present such videotapes. For instance, the tapes might well have been more prejudicial than probative, as they likely highlighted the extent of the growing operation at Monterey as clearly as the condition of the harvested plants. At any rate, Judge Rosen did not rely solely on the amount of marijuana seized from any one location in determining that Petitioner was responsible for a conspiracy to sell

marijuana in the quantities on which he was sentenced. In fact, he felt the evidence supported a finding that Petitioner was likely responsible for a much higher quantity, perhaps even ten times the amount for which he was being sentenced (Dkt. #306, Sentencing Tr., p. 13). Therefore, even if the video tapes had been presented and half of the 245 pounds of marijuana seized from Monterey was subtracted from Petitioner's charge it is unlikely that his sentence would have been any different. The testimony and evidence presented simply would not have been overcome by this evidence, and Petitioner cannot show that he was prejudiced by its exclusion.

### (d.) Presentencing Report – FED. R. CRIM. P. 32(c).

Petitioner argues that Attorney Daly provided ineffective assistance in failing to insist that the sentencing court make specific findings regarding the objections Attorney Daly had made to the PSR.

Fed. R. Crim. P. 32 dictates that, for disputed portions of PSRs a *court* at sentencing:

. . . .

(B) must– for any disputed portion of the presentence report or other controverted matter– rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing; and

(C) must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons.

Fed. R. Crim. P. 32 (i)(3)(B) and (C).

Petitioner does not dispute that Attorney Daly made the proper written objections to the disputed portions of the PSR. Instead, his claim for ineffective assistance of counsel lies in Attorney Daly's failure to insist that the Court address each objection individually.

Attorney Daly submitted written objections to 14 paragraphs of the PSR that dealt with the

offenses with which Petitioner had been charged (Dkt. #368, Exhibit H). In this motion Petitioner takes issue with three paragraphs in the PSR, ¶¶21, 23, and 32, that attribute various amounts of marijuana to him and argues that Attorney Daly should have insisted that Judge Rosen address the objections to these paragraphs individually.[4]

At the sentencing hearing Judge Rosen asked Attorney Daly if he wished to address the written objections orally (Dkt. #306, Sentencing Tr., p. 8). Attorney Daly indicated that he stood by his written objections, but reiterated to which paragraphs he had filed objections and summarized his overall theory that Petitioner could only be held responsible for the marijuana that was taken directly from the vehicle he was driving on May 24, 1995 (*Id.* at p. 9).

The government responded saying that this finding would be inapposite to the weight of the proofs it had presented and would require that none of its witnesses be believed (*Id.* at p. 10-12). Judge Rosen agreed and indicated that it was his recollection that there had been eye-witness testimony regarding Petitioner's direct involvement in the marijuana selling operation that had grossed approximately $20,000 per day at one location, that there was "no doubt" in his mind that the quantities for which Petitioner was being held responsible were "low and conservative" and he would not have been surprised if the actual quantities were ten times greater (*Id.* at p. 12-13). Judge Rosen then indicated that he was noting and rejecting Attorney Daly's objections to the PSR paragraphs regarding drug quantity (*Id.* at p. 13).

Judge Rosen ruled on the dispute as required by Fed. R. Crim. P. 32 (B) and clearly indicated

---

[4] Paragraph 21 attributes to Petitioner 1,300 pounds of marijuana seized in 1988 in Detroit; Paragraph 23 attributes to Petitioner 400 pounds of marijuana seized from Petitioner's car (the parties agree this should read 3-4 pounds) and Paragraph 32 attributes to Petitioner a transaction in which his co-conspirator Karamoko attempted to purchase 200 pounds of marijuana (Dkt. #376, p. 26).

that he was not relying on the PSR alone in making the determination that Petitioner was responsible for the amounts of marijuana for which he had been charged. The only way Attorney Daly could arguably be said to have failed Petitioner was in possibly neglecting to follow-up and make sure that a copy of Judge Rosen's ruling was appended to the PSR if such was to be made available to the Federal Bureau of Prisons. Yet, assuming that this was not done, it is not the burden of Attorney Daly to do this when Rule 32 clearly indicates it is the duty of the court. It is of greater significance that Petitioner cannot show that he was prejudiced by the fact that Judge Rosen's findings may not be attached to Petitioner's PSR or by the fact that Judge Rosen did not make his findings on the objections individually.

### 2. Appellate Counsel

**(a.) failure to file a reply brief and demand oral argument to ensure consideration of arguments presented in brief presented by first court - appointed appellate counsel**

It is well-settled that criminal Petitioners are entitled to effective counsel in their first appeal of right. *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004). Petitioner contends that appellate counsel, Melvin Houston, was ineffective in failing to file a reply brief and request oral argument thereby failing to ensure that Petitioner received a ruling on the issues posited in the brief filed by previous appellate counsel, Robert Rosenberg.[5]

An attorney's decision to waive oral argument and/or refrain from filing a reply brief does not automatically amount to ineffective assistance of counsel. *See United States v. Helgesen*, 669

---

[5] As noted above, Petitioner was initially represented on appeal by court-appointed counsel Elizabeth Jacobs, who withdrew and was replaced by court-appointed counsel Robert Rosenberg. Attorney Rosenberg withdrew and was replaced by court-appointed counsel Melvin Houston.

F.2d 69, 72 (2d Cir.) (trial counsel's failure to make opening or closing statement not basis for ineffective assistance claim); *Locke v. Jenkins*, 1985 WL 4864, at *4 (N.D.Ill. 1985) (waiver of oral argument not ineffective assistance of appellate counsel); *Arce v. Smith*, 710 F.Supp. 920, 933 (S.D.N.Y.,1989) (must show that decision reached would reasonably likely have been different after oral argument).  In order to succeed in this argument, Petitioner must demonstrate that if the appeal had been argued orally or a reply brief had been filed, "the decision reached would reasonably likely have been different".  *Strickland*, 466 U.S. at 696.

Petitioner's argument that Attorney Houston failed to champion the arguments contained in Attorney Rosenberg's brief amounts to a challenge to the issues Attorney Houston decided to pursue.  Yet, it is well-settled that an appellant has no constitutional right to have every non-frivolous issue raised on appeal.  " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2002).  In order to succeed Petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 289.

Petitioner points to the following as the issues that were not raised by Attorney Houston nor

specifically addressed in the Sixth Circuit Court's opinion: (a.) whether, in light of *Apprendi* and the authority of courts to depart from the sentencing guidelines for aggravating or mitigating circumstances, Judge Rosen would have had "incentive . . . to exercise . . . discretionary authority to impose a lower sentence"; (b.) whether, applying *Apprendi*, Petitioner's substantive rights had been affected at trial under the "plain error" standard; (c.) the fact that he was attributed with a quantity of marijuana in his PSR which he felt was unsubstantiated by the evidence and his objections to the individual PSR paragraphs were not addressed individually; and (d.) whether there was insufficient evidence as a matter of law to convict him of a conspiracy to commit money laundering.

As discussed more throughly above, Judge Rosen made a finding at the sentencing that the evidence supporting Petitioner's conspiracy to distribute marijuana charge had been overwhelming. He felt it was likely that Petitioner was responsible for up to ten times the amount with which he was being charged (Dkt. # 306, Sentencing Tr., p. 13). Therefore, it cannot be said that Attorney Houston fell below reasonable standards of conduct or prejudiced Petitioner by failing to argue on appeal that the matter should be remanded so that the sentencing Judge could consider mitigating circumstances in light of *Apprendi*. Further, Petitioner was clearly not prejudiced by Attorney Houston's alleged failure to argue the elements of the "plain error" standard to the Sixth Circuit panel in his *Apprendi* argument, as it is undisputed that this standard was addressed in the appellate opinion without error.

The merits of the argument regarding the drug quantity listed in the PSR paragraphs is also discussed more throughly above. Judge Rosen made a finding rejecting Attorney Daly's objections to the PSR and indicating that he was relying on the vast testimony supporting the fact that

Petitioner was responsible for at least the 1000-3000 kilograms of marijuana for which he was being charged. Therefore, this argument is without merit and Attorney Houston's representation cannot be considered ineffective for his failure to raise it on appeal.

The last question raised by Petitioner is whether Attorney Houston provided ineffective assistance by failing to ensure that the appellate panel addressed the argument that there was insufficient evidence on which the jury could convict Petitioner of money laundering. Again, Petitioner must show that Attorney Houston's conduct fell below the reasonable standards in choosing not to present this argument on appeal.

> In deciding whether the evidence is sufficient to withstand a motion for an acquittal, and support a conviction, the court views all evidence in the light most favorable to the prosecution and determines whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt. *See United States v. Welch,* 97 F.3d 142, 148 (6th Cir.1996), *cert. denied sub nom. Parker v. United States,* 519 U.S. 1134, 117 S.Ct. 999, 136 L.Ed.2d 879 (1997). In undertaking this analysis, this court neither independently weighs the evidence, nor judges the credibility of witnesses who testified at trial. *Id.* A court properly denies a challenge to the sufficiency of the evidence where "after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Allen,* 954 F.2d 1160, 1169 (6th Cir.1992).

*U.S. v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999).

Additionally, where, as here, no motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 was made before the district court, the appellate court could not disturb the jury's verdict absent a showing of a "manifest miscarriage of justice." *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir. 1998) (internal quotation marks and citation omitted). Such a showing exists "only if the record is 'devoid of evidence pointing to guilt.' " *Id.* (citation omitted).

Therefore, to establish his insufficiency of the evidence claim on appeal, Petitioner would have had to show that the record was devoid of evidence that he was involved in a conspiracy to launder money, i.e. to (1) use funds that were proceeds of unlawful activity; (2) with knowledge that the funds are proceeds of unlawful activity; and (3) conduct or attempt to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the nature, location, source, ownership or control of the proceeds. *United States v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000) (quotation and citation omitted).

In the present case the government presented the jury with testimony and documents indicating that Petitioner and Karamoko formed the Sankofa Corporation in 1989 and used it to acquire buildings at 2909 Montclair (1990), 13835 LaSalle (1993), 3037 Monterey (1990) and 6510 Bewick, all of which were used to store, grow and/or distribute large quantities of marijuana, as much as 20 pounds per day, as part of a marijuana sales enterprise run by Petitioner and Karamoko. In certain instances Petitioner and Karamoko used aliases during the purchase transactions and made payments towards the buildings with cash or cashiers checks purchased under these assumed names.[6] Further, Petitioner apparently does not dispute Respondent's contention that he had no income tax returns to support any legitimate income.[7]

Therefore, the record is clearly not "devoid of evidence pointing to guilt" of Petitioner's

---

[6] Cashier's checks issued to third parties are evidence of intent to conceal the nature and source of a transaction. *See United States v. Brown*, 53 F.3d 312, 313-14 (11th Cir. 1995).

[7] Petitioner's argument that trial counsel was at fault for not presenting witnesses that could have testified regarding his legitimate income earned through Strictly Roots Recordings and Alkebulan Art and Deli has already been addressed, but it bears repeating that these witnesses, even taken as wholly credible do not appear to be able to offer evidence regarding the financial viability of these businesses, nor the reason no income was, apparently, reported to the Internal Revenue Service.

involvement in a conspiracy to commit money laundering. In fact, in cannot be said, after viewing the evidence in a light most favorable to the prosecution, that *any* rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. Therefore, it also cannot be said that Attorney Houston's conduct fell below the standard of reasonableness or prejudiced Petitioner when he decided not to pursue this argument at the appellate level.

### (c.)    Money Laundering Sentence

Petitioner's final argument is that both trial and appellate counsel were ineffective for not pointing out that the sentence on the money laundering offense exceeded the guideline range. Petitioner was sentenced under the 1998 Federal Sentencing Guideline Manual (FSG), §2S1.1 for money laundering offenses (*See* Appendix A, PSR, p. 12). At the time, this carried a base offense level of 23 (FSG §2S1.1(a)(1)). Petitioner received a 3 point enhancement because it was determined that he knew the funds were involved in the distribution of marijuana (FSG §2S1.1(b)(1)) and a 2 point enhancement for laundering in excess of $240,000 (FSG §2S1.1(b)(2)(C)) (Appendix A, PSR, p. 13).

Petitioner's Conspiracy to Distribute Marijuana charge had an adjusted base offense of 38 (Dkt. #306, Sentencing Tr., p. 7), and all Petitioner's charges were grouped together pursuant to §3D1.2(b) (Appendix A, PSR, p. 13). Petitioner's Criminal History Category was determined to be One (Dkt. #306, Sentencing Tr., p. 6). Therefore pursuant to the total punishment rule (FSG §3D1.5) and the FSG Sentencing Table, Petitioner was to be sentenced at 235-293 months. The maximum sentence for the money laundering charges was 20 years, or 240 months (18 U.S.C. 1956(a)(1)) – which is what Petitioner received. Therefore, his argument that his attorneys provided ineffective assistance of counsel for failing to object to this sentence as not being allowed under the

Guidelines is meritless.

### C.    Application of *Gonzalez*

In Petitioner's supplemental claim, he argues for the application of the United States Supreme Court's decision in *Gonzalez v. O Centro Espirita Beneficente Uniao Do Vegetal*, 126 S.Ct. 1211 (2006).  In *Gonzalez*, the Supreme Court upheld a preliminary injunction against the government's enforcement of the Controlled Substances Act (the Act), so as to allow a Brazilian religious sect to use a hallucinogenic tea, *hoasca*, during its ceremonies pending trial.  The court held that the government had the burden to demonstrate a compelling interest to enforce the Act on the sect.  The Court applied the Religious Freedom Restoration Act, 42 U.S.C. §2000bb-1(b) ("RFRA"), which "prohibits the federal government from substantially burdening a person's exercise of religion, unless the Government 'demonstrates that the application of the burden to the person' represents the least restrictive means of advancing a compelling interest." *Id*. (quoting 42 U.S.C. § 2000bb-1(b) (2006)).

It should be pointed out that *Gonzalez* does not create new law that was not in existence at the time of Petitioner's trial.  The opinion merely discusses the already existing right to be free from a burden on one's exercise of religion without a compelling government interest.  In fact, this opinion does not establish the right to use *hoasca* – the government merely failed to meet its burden of showing it has a compelling interest in prohibiting the use of *hoasca* as a preliminary matter.  Here, Petitioner was not convicted of using *hoasca* tea, he was convicted of manufacturing and selling many hundreds of pounds of marijuana and money laundering.

To the extent Petitioner is arguing that *Gonzalez* stands for the proposition that any person may use drugs as part of their religion and, as a Rastafarian, he was entitled to use marijuana without

fear of conviction, the problems with this argument are two-fold. First, there is no case-law allowing Rastafarians to manufacture and use marijuana unfettered by the criminal drug statutes, nor financially profit from the sale of the drugs to others. Second, at his trial Petitioner's trial counsel succeeded in obtaining a jury instruction stating that the use of marijuana for religious purposes was a constitutionally protected right. The instruction allowed the jury to acquit Petitioner if the jury believed that the evidence showed that Petitioner used marijuana for only religious purposes (Dkt. #332, 2/3/99 Trial Tr., pp. 127-131). The jury proceeded to convict Petitioner. Therefore, Petitioner's supplemental claim is without merit.

## III.    RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Petitioner's motion under 28 U.S.C. §2255 be DENIED. Because this result would not be debatable among reasonable jurists, IT IS FURTHER RECOMMENDED that pursuant to 28 U.S.C. §2253(c) a certificate of appealability should not issue. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Any objections to this Report and Recommendation must be filed within ten (10) days of its service. 28 U.S.C. §636(b)(1); E.D. Mich. LR 72.1(d)(2). Failure to file objections within the specified time constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ivey v. Wilson*, 832 F.2d 950, 957-58 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Pursuant to E.D. MICH. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: May 14, 2007*                                  s/Steven D. Pepe
Ann Arbor, Michigan                                   United States Magistrate Judge


### Certificate of Service

I hereby certify that on May 17, 2007, I electronically filed the foregoing order with the Clerk of the Court using the ECF system which will send notification of such filing to Daniel J. Lemisch, AUSA , and I hereby certify that I have mailed by United States Postal Service a the paper to the following non-ECF participants: Larry Martin #19488039, Federal Correctional Institution (Elken), P.O. Box 10, Lisbon, OH 44432-0010.

s/ James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church St.
Flint, MI 48502
810-341-7850
pete_peltier@mied.uscourts.gov